NATIONAL LABOR RELATIONS
BOARD, Petitioner,

and

American Flint Glass Workers
Union, Intervenor,

v.

BARTLETT–COLLINS COMPANY,
Respondent.

No. 79–1090.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 17, 1980.

Decided Jan. 19, 1981.

---

**14.** *See generally* note 12, *supra*.

Ruah D. Lahey, Washington, D. C. (William Wachter and Joseph P. Norelli, Attys., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on brief), for petitioner.

Harold E. Mueller of Mueller & Mueller, Fort Worth, Tex., for respondent.

John M. Keefer of Chapel, Wilkinson, Riggs, Abney & Keefer, Tulsa, Okl., on brief, for intervenor.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The American Flint Glass Workers of North America, AFL–CIO, filed an unfair labor practice charge alleging that Bartlett-Collins Company violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5),[1] by insisting upon the use of a court reporter to transcribe negotiations as a precondition to collective bargaining. The National Labor Relations Board found the Company's action a violation of those sections. The Board ordered the Company to cease insisting to impasse on the presence of a court reporter during negotiations and interfering in any like manner with the Union's effort to bargain on behalf of the Company's employees. Pursuant to section 10(e) of the Act, 29 U.S.C. § 160(e), the Board seeks to enforce its order. We grant enforcement.

## I.

## A.

### Background

In June 1974, the Board certified the Union as collective bargaining agent for the Company's employees. After seven bargaining sessions, the Union filed unfair labor practice charges against the Company. The Administrative Law Judge (ALJ) found the Company in violation of section 8(a)(5) of the Act for refusing to bargain in good faith with the Union.

Thereafter, the parties met on July 29, 1976 for further negotiations. At the outset of the meeting, Harold E. Mueller, the Company's attorney and chief negotiator, announced the presence of a court reporter to ensure an accurate transcript. Mueller stated this was necessary in view of the prior unfair labor practice proceeding "in which there was some question about the accuracy of testimony concerning what had transpired at bargaining meetings." Rec., vol. I, at 116. The Union attorney, John M. Keefer, objected to the procedure. He felt a court reporter was unnecessary and costly and that his presence would create a courtroom atmosphere, induce unnecessary speech making, and frustrate negotiations. After considerable wrangling, the Union proposed that the sessions be tape-recorded and later transcribed. The Company continued to insist upon a court reporter. Af-

---

1. These sections provide:

"(a) It shall be an unfair labor practice for an employer—
"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

"...
"(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."
29 U.S.C. § 158(a)(1), (5).

ter forty minutes of argument, the Union agreed to the use of the court reporter for that day's meeting, but continued its objection to his presence at future meetings.

## B.

### Events giving rise to the instant proceeding

No further negotiations were held until after the Board, on June 13, 1977, affirmed the ALJ's decision that the Company had refused to bargain in good faith. *See Bartlett-Collins Co.*, 230 N.L.R.B. 144, 96 L.R.R.M. 1581 (1977). On June 27, 1977, the parties agreed to meet in July for further negotiations. In a June 30 letter, Mueller informed Keefer that the Company intended to have an impartial court reporter transcribe all bargaining sessions, with the record binding on all parties. The Company offered to bear the entire expense. The letter stated that the Board decision, which allegedly rested upon credibility determinations, coupled with the possibility of further review of the Company's bargaining conduct by the Board and the courts, made an accurate record of the negotiations imperative.

In a July 8 letter, Keefer renewed the Union's objections to the Company's insistence on the presence of a court reporter at negotiating sessions.[2] As an alternative, Keefer proposed that each party be free to record bargaining sessions with its own recording equipment and to transcribe the recordings. The company rejected this counterproposal and continued to insist on recording of negotiations by a certified court reporter as a prerequiste to further bargaining. The Union filed the instant unfair labor practice charges on July 15, 1977, alleging the Company had violated sections 8(a)(1) and (5) of the Act by insisting to impasse on this matter. The Board agreed. *See Bartlett-Collins Co.*, 237 N.L.R.B. 770, 99 L.R.R.M. 1034 (1978).

On appeal, the Company argues enforcement should be denied because (1) the Board improperly found use of a court reporter during negotiations to be a nonmandatory subject of bargaining, and (2) the Board misconstrued the dispute to be whether a record should be made instead of simply how the record should be made.

## II.

### A.

### The duty to bargain under Borg-Warner

Section 8(a)(5) of the Act states that "[i]t shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees . . . ." 29 U.S.C. § 158(a)(5). Section 8(d) defines collective bargaining, in pertinent part, as

"the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession . . . ."

*Id.* § 158(d). In *NLRB v. Wooster Division of Borg-Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958), the Supreme Court read these two provisions together as "establish[ing] the obligation of the employer and the representative of its employees to bargain with each other in good faith with respect to 'wages, hours, and other terms and conditions of employment . . . .'" The Court held that the "duty is limited to those subjects, and within that area neither party is legally obligat-

---

2. The objections were based on the belief that the presence of a court reporter "at the bargaining table tends to interfere with and unduly impede negotiations and frank discussions between the parties," and would cause several members of the negotiating committee "feelings of discomfort, tension and reluctance to state their views" because they are not accustomed to proceedings where stenographic transcripts are made. Rec., vol. I, at 169.

ed to yield.... As to other matters, however, each party is free to bargain or not to bargain, and to agree or not to agree." *Id.* (citation omitted); *accord, Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 210, 85 S.Ct. 398, 402–403, 13 L.Ed.2d 233 (1964).

■ Thus, the Court has divided bargaining proposals into two mutually exclusive categories, mandatory and nonmandatory subjects of bargaining. It is "lawful to insist upon matters within the scope of mandatory bargaining and unlawful to insist upon matters without." *Borg-Warner*, 356 U.S. at 349, 78 S.Ct. at 723. The good faith intentions of the insisting party do not affect how the proposal is categorized. The Court specifically stated in *Borg-Warner* that good faith does not entitle a party to insist upon nonmandatory subjects as a precondition to agreement. *See id.*

### B.

*Application of the Borg-Warner standard*

The Board concluded that the demand for the presence of a court reporter to record negotiations is not a mandatory subject of bargaining and that insistence to impasse on this issue is a violation of the Act. *Bartlett-Collins Co.*, 99 L.R.R.M. at 1035–36. The Company attacks this finding as improper. It contends that neither the language of the Act nor policy considerations warrants the Board's interpretation.

■ In reviewing a Board decision as to whether an issue constitutes a mandatory bargaining subject, we must give "considerable deference" to the Board's judgment. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979). Congress delegated to the Board "the primary responsibility of marking out the scope of ... the statutory duty to bargain," *id.* at 496, 99 S.Ct. at 1848, and the classification of bargaining subjects " 'is a matter concerning which the Board has special expertise.' " *Id.* at 495, 99 S.Ct. at 1848 (quoting *Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 686, 85 S.Ct. 1596, 1600, 14 L.Ed.2d 640 (1965)).

■ Enforcement of Board orders is denied when they have "no reasonable basis in law," are "fundamentally inconsistent with the structure of the Act," or "attempt to usurp major policy decisions properly made by Congress." *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849. But if the Board's construction "is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute." *Id.; accord, Latrobe Steel Co. v. NLRB*, 630 F.2d 171, 176 (3d Cir. 1980).

■ The Board's decision that the presence of a court reporter during collective bargaining is a nonmandatory subject of bargaining is not vulnerable on any of these grounds. We cannot say the decision was without reasonable basis in law. The Board grounded its conclusion on the reasoning that the issue of a court reporter during negotiations does not

"fall within 'wages, hours, and other terms and conditions of employment.' Rather these subjects are properly grouped with those topics defined by the Supreme Court as 'other matters' about which the parties may lawfully bargain, if they so desire, but over which neither party is lawfully entitled to insist to impasse. The question of whether a court reporter should be present during negotiations is a threshold matter, preliminary and subordinate to substantive negotiations such as are encompassed within the phrase 'wages, hours, and other terms and conditions of employment.' "

99 L.R.R.M. at 1036.

While the Company argues that recording of bargaining sessions is not a threshold matter because it is such a part of the fabric of bargaining that it constitutes a term and condition of employment, we disagree. There is "no significant relationship between the presence or absence of a stenographer at negotiating sessions, and the terms or conditions of employment of the employees." *Latrobe Steel Co.*, 630 F.2d at 176. It does not "settle an aspect of the relationship between the employer and employees." *Allied Chemical & Alkali Work-*

ers of America v. Pittsburgh Plate Glass Co., 404 U.S. 157, 178, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971). Nor does it have a "direct, significant, relationship to wages, hours or terms or conditions of employment. A mere remote or incidental relationship is insufficient." NLRB v. Massachusetts Nurses Association, 557 F.2d 894, 898 (1st Cir. 1977). Accord, NLRB v. Columbus Printing Pressmen & Assistants' Union, 543 F.2d 1161, 1165–66 (5th Cir. 1976); Seattle First National Bank v. NLRB, 444 F.2d 30, 33 (9th Cir. 1971). Although there may exist some preliminary matter that is so inextricably interwoven with the substance of a contract that it constitutes a term or condition of employment, we need not decide that issue. It is clear the presence of a court reporter is not such a matter.

Nor is the Board's ruling fundamentally inconsistent with the structure of the Act or a usurpation of Congressional authority. The purpose of the Act is to foster collective bargaining and the resolution of industrial disputes. See 29 U.S.C. § 151; Fibreboard Paper Products Corp., 379 U.S. at 211, 85 S.Ct. at 403. It would undermine the policy of the Act to allow negotiations to break down over a threshold procedural issue such as this one. See Latrobe Steel Corp., 630 F.2d at 177. It would create a tool of avoidance for those who wish to impede or vitiate the collective bargaining process. See St. Louis Typographical Union, 149 N.L.R.B. 750, 57 L.R.R.M. 1370, 1371 (1964) (Fanning and Brown, concurring). Too often negotiations would flounder before their true inception. Id.

The Company argues that no honest bargainer can be disadvantaged by the recording of bargaining sessions. However, the Board and numerous experts in the field of labor relations believe that the presence of a court reporter "has a tendency to inhibit the free and open discussion necessary for conducting successful collective bargaining." Bartlett-Collins Co., 99 L.R.R.M.

1034, 1036 n. 9. See also Reed & Prince Manufacturing Co., 96 N.L.R.B. 850, 28 L.R.R.M. 1608, 1610 (1951), enforced on other grounds, 205 F.2d 131 (1st Cir.), cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953). It may cause parties to talk for the record rather than to advance toward an agreement. See Bartlett-Collins Co., 99 L.R.R.M. at 1036 n. 9. The proceedings may become formalized, sapping the spontaneity and flexibility often necessary to successful negotiations. See id. When a court reporter is demanded over objection, bargaining is likely to begin on a discordant note. See Reed & Prince Manufacturing Co., 28 L.R.R.M. at 1610. The request may give notice that one party lacks confidence in the collective-bargaining process, anticipating litigation rather than agreement. See St. Louis Typographical Union, 57 L.R.R.M. at 1372 (Fanning and Brown, concurring). In sum, the process of "informed persuasion," NLRB v. Insurance Agents' International Union, 361 U.S. 477, 490, 80 S.Ct. 419, 427, 4 L.Ed.2d 454 (1960) (quoting Cox, The Duty to Bargain in Good Faith, 71 Harv.L.Rev. 1401, 1409 (1958)), may be supplanted by the concern for being a careful litigant.

The Company argues that recording bargaining sessions provides important benefits. It speeds bargaining by freeing parties of the burden of note taking. It helps the parties in later construing and applying the final agreement. It is a source for the Board and courts to refer to in the event of litigation. And it allegedly promotes responsibility in bargaining by minimizing idle chatter, filibustering and intemperate behavior. In support of these contentions, the Company notes that all of the Board's formal proceedings are transcribed.

Recording of bargaining sessions does have some positive aspects, but their value is not as great as the Company asserts when the recording is done over the objection of a party.[3] Making a verbatim tran-

---

3. Also exaggerated in the Company's argument are the negative implications of the Board's holding. The Company contends that the ultimate effect of the Board's order is that no

record of bargaining can be made, not even notes, memoranda, or minutes. The argument is frivolous. The Board limited its ruling to situations in which a party insists to impasse

script does not necessarily facilitate party interpretation of a labor contract and Board resolution of refusal-to-bargain charges. The parties remain "free to discuss points outside of the bargaining room and even while in bargaining sessions they are free to make 'off the record' statements." *NLRB v. Southern Transport, Inc.*, 355 F.2d 978, 984 (8th Cir. 1966). Thus, the parties could continue to haggle over the meaning of the contract. In unfair labor practice proceedings, the Board would still be required to take testimony and make findings of fact as to what occurred when the parties were not speaking on the record. Moreover, the temperate and responsible bargaining the Company asserts would follow from the use of a court reporter may simply reflect a stultified process of negotiations and posturing for the record instead of the spontaneous, frank, no-holds-barred interchange of ideas and persuasive forces that successful bargaining often requires.

The Company's analogy to recording of formal Board proceedings is misplaced. The purposes of collective bargaining and those of the judicial process are not the same. Court reporters are an integral part of an adjudicatory hearing because they facilitate the main goal of adjudication, ascertaining the truth. Collective bargaining, on the other hand, "cannot be equated with an academic collective search for truth—or even with what might be thought to be the ideal of one." *NLRB v. Insurance Agents' International Union*, 361 U.S. at 488, 80 S.Ct. at 426. Agreement is the result of, among other things, the relative economic power of the opposing parties, reason, public opinion, accommodation, and persuasion. *Id.* at 489–90, 80 S.Ct. at 427. The pursuit of truth and justice is not always the guiding beacon in collective bargaining. The goal of ascertaining with 100 percent accuracy what was said in negotiations may be subordinate to other concerns, such as ensuring peaceful resolution of industrial disputes.

The number of cases in which bargaining parties resort to adjudication and in which resolution depends upon an accurate record of the bargaining process is small in comparison to the number of labor contracts negotiated. This fact supports the reasonableness of the Board's conclusion that any advantages from stenographic recording of negotiations are outweighed by the negative effects on the bargaining process of allowing one side to insist upon the presence of a court reporter.

■ There is not universal acceptance of this position. *See Southern Transport, Inc.*, 355 F.2d at 982–83; Modjeska, *Guess Who's Coming to the Bargaining Table?*, 39 Ohio St.L.J. 415 (1978). But the critical inquiry is whether the Board's conclusion is a reasonable one. Under the deferential review accorded the Board in its " 'special function of applying the general provisions of the Act to the complexities of industrial life,' " *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975) (quoting *NLRB v. Erie Resistor Corp.*, 373 U.S. 221, 236, 83 S.Ct. 1139, 1149–1150, 10 L.Ed.2d 308 (1963)), all that is necessary is that its construction of what is a mandatory bargaining subject "is not an unreasonable or unprincipled" one. *Ford Motor Co.*, 441 U.S. at 497, 99 S.Ct. at 1849. The Board has more than met that standard.

The reasonableness of the Board's construction is not altered because it reverses its previous rulings. The Board candidly admits that in prior cases it has, in effect, treated the issue of the presence of a court reporter as a mandatory subject of bargaining. *See Bartlett-Collins Co.*, 99 L.R.R.M. at 1035. The Board formerly applied a good faith standard in deciding if a negotiating party's insistence to impasse on the presence of a court reporter at bargaining sessions constitutes an unfair labor practice. *See, e. g., Reed & Prince Manufacturing Co.*, 28 L.R.R.M. 1608 (1951).

■ It is not improper for the Board to change its position. Rather, it is appropri-

on the presence of a court reporter during negotiations or the use of a device to record those

negotiations. *See Bartlett-Collins Co.*, 99 L.R. R.M. at 1036.

ate for the Board to do so when its accumulated experience demonstrates that change is warranted:

> "The use by an administrative agency of the evolutional approach is particularly fitting. To hold that the Board's earlier decisions froze the development of this important aspect of the national labor law would misconceive the nature of administrative decisionmaking. 'Cumulative experience begets understanding and insight by which judgments . . . are validated or qualified or invalidated. The constant process of trial and error, on a wider and fuller scale than a single adversary litigation permits, differentiates perhaps more than anything else the administrative from the judicial process.' "

*NLRB v. Weingarten, Inc.*, 420 U.S. at 265–66, 95 S.Ct. at 967–968 (quoting *NLRB v. Seven-Up Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953)). As long as the new position is fully explained and is a fair and reasoned one within the scope of the Board's authority, the Board may substitute it for a prior ruling. *See id.* 420 U.S. at 267, 95 S.Ct. at 968; *Latrobe Steel Co.*, 630 F.2d at 177.

Nor can we agree with the Company that this new ruling violates judicial precedent. The case relied upon by the Company, *NLRB v. Southern Transport, Inc.*, 355 F.2d 978 (8th Cir. 1966), did speak favorably of stenographic recording of bargaining sessions, but this was in relation to the court's decision that the insisting party's demand had been made in good faith. The Eighth Circuit did not consider whether the matter constituted a mandatory subject of bargaining. The only other circuit court addressing this issue found the use of a stenographer at bargaining sessions to be a nonmandatory subject of bargaining. *See Latrobe Steel Co. v. NLRB*, 630 F.2d 171 (3d Cir. 1980). In fact, the Third Circuit relied upon the Board's decision in this case in so ruling.

### III.

The Company asserts that the Board's finding of an unfair labor practice was im-

proper because the issue between the parties was *how* the record of bargaining was to be made, not *whether* one should be made at all. Apparently, the Company is alleging that both parties were insisting on some means of recording and that the Board unfairly blamed the breakdown in negotiations on the Company.

This argument is without merit. The record makes clear that only the Company insisted on recording the bargaining sessions. In the July 29, 1976 meeting, counsel for the union repeatedly objected to the presence of a court reporter. Finally, after forty minutes of wrangling, he agreed to the use of one for that meeting but he continued his objection regarding future meetings. In setting up the guidelines for the July 1977 meetings, the Company again introduced a demand for stenographic recording of the bargaining sessions. The Union continued its objection to the procedure. It was only "in the spirit of compromise" that the Union suggested electrical recording of the proceeding.

Even if the issue thereby became simply how to record, it was the Company that went to impasse. The Union made a counterproposal to the Company's demand for stenographic recording, but the Company was unwilling to budge, declaring that a court reporter's transcription was a precondition to further bargaining. Under these circumstances, the Board was justified in finding the Company failed to bargain in good faith.

Enforcement of the Board's order is granted.