**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PENNSYLVANIA TELEPHONE GUILD, Respondent.**

**No. 86–3059.**

United States Court of Appeals, Third Circuit.

Argued Aug. 5, 1986.
Decided Aug. 26, 1986.

---

Harry Weinberg, Paul M. Levinson (Argued), Demarest, N.J., for respondent.

John F. Welsh, (Argued), Atty., Rosemary M. Collyer, General Counsel, John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., for petitioner.

Before SEITZ, ADAMS, and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

This appeal requires us to address the question whether a union violated the National Labor Relations Act (NLRA) by insisting that a grievance meeting be tape-recorded even after management refused to take part in a tape-recorded meeting. The National Labor Relations Board (Board) found that the union in insisting on the taping failed to bargain in good faith as required by the Act, and ordered it to cease and desist. Because substantial evidence exists to support the Board's conclusion, we will enforce the order of the Board.

### I.

Since 1944, the Bell Telephone Company of Pennsylvania (Company) and the Pennsylvania Telephone Guild (Union) have entered into a series of collective bargaining agreements containing grievance and arbitration procedures for dispute resolution.

The Company suspended five employees in early 1984 for allegedly engaging in an unauthorized work stoppage. On March 26, 1984, the Company conducted a series of investigatory meetings to determine whether four other employees, all local union officials, had instigated the work stoppage. Union District President John Zawackis, one of the employees under investigation, attended and tape recorded all the investigative meetings held that day. The Company objected to Zawackis's tape recording of the meetings. On the same day, the Company announced the suspension of union officers for three to five days for their involvement in the unauthorized work stoppage. Zawackis also recorded the meetings at which the suspensions were announced. Neither the investigatory meetings nor the meetings to announce suspension constituted grievance meetings under the contract.

In response to the suspensions, the Union initiated the grievance procedure. On

April 3, 1984, after both parties waived the first two steps of the grievance procedure, a third-level grievance meeting was held to consider the Union's protest of the suspensions of the five employees. Zawackis represented the Union; the Company was represented by Avery Robinson. Zawackis brought a tape recorder to the meeting.

Robinson immediately objected to the use of the tape recorder "for the processing of the grievance." Zawackis responded that he intended to tape record "the entire grievance ... because ... this here is [a] very unique situation, and we want the most accurate record of the grievance that we can possibly get." Robinson then repeated his objection to the tape recording, stating that "it [would inhibit the] open and honest discussion ... necessary to resolve the grievance, [it would cause] people to talk for the record rather than try to solve the problem and address the grievance." Further, he maintained the taping would formalize the process and "[prevent] the flexibility needed in reaching a practical solution to the grievance." In spite of Robinson's objections, Zawackis insisted on recording the grievance meeting.

After a recess, the Company stated that it would permit the meeting to be recorded under protest if the Union would agree to use the tape recording of the grievance as a test case before the Board and not tape any other meeting until the case was resolved by the Board. The Union refused. The Company repeated that it was ready to meet and discuss the grievances, but not while the recorder was running. In response, the Union accused the Company of violating the collective bargain contract. The meeting ended without discussion of the merits of the grievance.

On April 5, a separate third-level grievance meeting was held to consider the disciplinary suspensions of the four union officials. Zawackis again turned on the tape recorder and stated that the Union intended to record the grievance meeting. Robinson refused to discuss the grievance with the tape recorder on, although he was willing to discuss use of the recorder. Be-

cause the parties could not reach agreement on the use of the tape recorder, the April 5 meeting also was terminated without any discussion of the merits of the grievance.

The Company subsequently filed an unfair labor practice charge with the Board, claiming that the Union's insistence on tape-recording the grievance meetings constituted a violation of the duty to bargain in good faith under § 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3) (1982). The Administrative Law Judge (ALJ), however, ruled that the Union had not violated § 8(b)(3). He distinguished *NLRB v. Bartlett-Collins Co.*, 639 F.2d 652 (10th Cir.), *cert. denied*, 454 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), which held that a party's insistence on tape recording collective bargaining negotiations constituted an unfair labor practice, on the ground that grievance meetings differed substantially from collective bargaining negotiations.

On appeal to the NLRB, the Board disagreed with the ALJ, asserting that grievance meetings and collective bargaining negotiations are substantially similar. Adopting the reasoning of *Bartlett-Collins*, the Board found that the use of a recorder could inhibit free and open discussions in grievance meetings as well as in collective bargaining sessions. With the use of a recorder, the Board declared, the goal of adjusting the grievance would become subordinate to the preparation of a record for later arbitration or litigation. Further, only some grievance proceedings are eventually submitted to arbitration. Thus, the adverse effects on the bargaining process outweighed the need for a verbatim transcript. The Board therefore held that the Union had violated the duty to bargain in good faith by insisting to impasse on the use of a recording device to record grievance meetings. It ordered the Union to cease and desist from refusing to bargain in good faith with the Company over the processing and adjustment of grievances. The Board now petitions this Court to enforce its order.

## II.

■ Under 29 U.S.C. § 160(e), we must affirm Board decisions if there is substantial evidence on the record as a whole to support the Board's findings of a violation, regardless of whether this Court would reach a different conclusion if the matter were before it *de novo*. The legal conclusions of the Board must be "reasonably defensible" to be upheld. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979).

## III.

■ Sections 8(a)(5), 8(b)(3), and 8(d) of the NLRA, 29 U.S.C. §§ 158(a)(5), 158(b)(3), and 158(d), "establish the obligation of the employer and the representative of its employees to bargain with each other in good faith with respect to 'wages, hours, and other terms and conditions of employment....' The duty is limited to those subjects, and within that area neither party is legally obligated to yield.... As to other matters, however, each party is free to bargain or not to bargain...." *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 210, 85 S.Ct. 398, 402–03, 13 L.Ed.2d 233 (1964) (quoting *NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 349, 78 S.Ct. 718, 722–23, 2 L.Ed.2d 823 (1958)). Accordingly, lawful subjects of bargaining are divided into two categories: mandatory and nonmandatory. Even in the absence of bad faith, a party violates the NLRA by insisting on a nonmandatory subject as a precondition to bargaining. *Borg-Warner*, 356 U.S. at 348–50, 78 S.Ct. at 722–23. Such insistence is, in effect, a refusal to bargain about mandatory subjects of bargaining. *Id.* at 349, 78 S.Ct. at 722–23.

## IV.

### A.

The Board argues that the Union's demand for verbatim tape recording of the grievance constitutes an unlawful insistence on a nonmandatory subject of bargaining. For support, it cites this Court's decision in *Latrobe Steel Co. v. NLRB*, 630 F.2d 171 (3d Cir.1980), *cert. denied*, 454 U.S. 821, 102 S.Ct. 104, 70 L.Ed.2d 92 (1981), and the Tenth Circuit decision, *NLRB v. Bartlett-Collins Co.*, 639 F.2d 652 (10th Cir.), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). The Board based its decision almost exclusively on *Barlett-Collins*. App. at 8–13.

In *Latrobe*, the company insisted on verbatim recording by a court reporter of collective bargaining negotiations. This Court upheld the Board's finding that verbatim recording of collective bargaining negotiations is a nonmandatory subject of bargaining. It was nonmandatory, we reasoned, because there is "no significant relation between the presence or absence of a stenographer at negotiating sessions, and the terms or conditions of employment of the employees." *Latrobe*, 630 F.2d at 176. Moreover, the Court explained, verbatim recording had the potential to chill negotiations and thereby impede reaching an agreement which it was the policy of the NLRA to encourage. Thus, by insisting on a nonmandatory subject of bargaining as a precondition to negotiation of mandatory subjects of bargaining, the company had violated its duty to bargain in good faith. *See Latrobe*, 630 F.2d at 179.

The employer in *Bartlett-Collins* also insisted on verbatim recording of collective bargaining sessions. The Tenth Circuit enforced the Board's order and upheld the Board's determination that verbatim recording of collective bargaining sessions was a nonmandatory subject of bargaining. Thus, the employer's insistence to impasse on the verbatim recording was a violation of the duty to bargain in good faith. *Bartlett-Collins*, 639 F.2d at 655–58. The court in *Bartlett-Collins* also reasoned that verbatim recording could chill negotiations: the presence of a court reporter "may cause the parties to talk for the record rather than to advance toward an agreement. The proceedings may become formalized, sapping the spontaneity and flexibility often necessary to successful negotiation." *Id.* at 656.

Because *Latrobe* and *Bartlett-Collins* deal with collective bargaining and not grievance meetings, the Union asserts that they are inapplicable to this case. It maintains, without elaboration, that "[t]here is a substantial difference between collective bargaining negotiations ... and a grievance meeting." The Board answers that grievance meetings and collective bargaining negotiations are substantially similar in character and method. Both are informal mechanisms used to resolve employee concerns about working terms and conditions through settlement and agreement. In contrast to trials or arbitration, the primary purpose of both is not to elicit facts, but to negotiate the settlement of disputes. Therefore, both require a free and open exchange of views so that resolution may be reached. We find convincing the Board's depiction of the similarities between grievance meetings and collective bargaining sessions, and consequently conclude that *Latrobe* and *Bartlett-Collins* are applicable to the facts of this case.

Alternatively, the Board argues that grievance meetings are not only similar to collective bargaining sessions, but they are "integral parts of the collective-bargaining process." Board at 12; App. at 9. *See NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). It asserts that grievance meetings are fundamental elements of the ongoing collective bargaining agreement, addressing issues arising under the contract and facilitating settlement of disputes. Therefore, if tape-recording is adverse to collective bargaining, it is also adverse to grievance meetings. *See Chicago Cartage Co. v. International Bhd. of Teamsters*, 659 F.2d 825 (7th Cir.1981) (presence of court reporter is likely to inhibit give and take of negotiation). Accordingly, the Board claims it was acting reasonably when it found that *Bartlett-Collins* was controlling. The Board also argues that insistence on a recorder over the other party's objection suggests a lack of confidence in the good faith of the other side. Such manifestations of suspicion and distrust

are antithetical to the negotiating process. *See Bartlett-Collins*, 639 F.2d at 656.

■ Accurate grievance minutes are necessary, the Union claims, because in the past both parties have submitted their minutes of grievance meetings into evidence during arbitration. But the Union offers no argument to explain why preparation for arbitration outweighs the need for an atmosphere in negotiation meetings which is conducive to settlement and resolution. The Union has assumed the pre-litigation stance that the Board argues is inappropriate for the successful settlement of disputes. Since the policy of the NLRA is to "promote the peaceful settlement of industrial disputes," rather than prolong them, the Union's concern with the preparation of a record for arbitration should be subordinate to the need for an atmosphere in negotiation that facilitates agreement. *See Fibreboard*, 379 U.S. at 221, 85 S.Ct. at 408–09. Thus, the Board acted reasonably in finding that the insistence on tape recording grievance meetings violated the duty to bargain in good faith even if some grievance meetings' minutes were later used in arbitration.

The Union also contends that Zawackis's recording of the meeting would not chill negotiations because "Zawackis did not intend to tape record those portions of the grievance meetings that dealt with the negotiations of the grievance." During the proceedings before the ALJ, Zawackis did testify that he did not intend to tape those parts of the meetings dealing with the "actual negotiation of the discipline." However, during the taping of the April 3 meetings, Zawackis stated, "I am going to use it for the entire grievance." And at the April 5 meeting, while the tape was running, he stated, "[W]e think we are in a grievance mode ... and we are clearly indicating ... that it is a grievance procedure." Therefore, substantial evidence supports the Board's finding that the Union's taping was intended to cover all aspects of the grievance and, therefore, that the negotiations could be chilled as indicated in *Latrobe* and *Bartlett-Collins*.

Even assuming that a grievance proceeding is a nonmandatory subject, the Union asserts that the Company rather than the Union caused the impasse by refusing to continue the grievance meeting with the tape recorder running. Therefore, the Union argues, it should not be held guilty of an unfair labor practice. The Union relies on the following language in *Latrobe:* "It would appear that it is equally violative of the Act to insist on the absence of stenographers as to insist that stenographers be present." 630 F.2d at 178. The Board emphasizes that this language is mere dictum, since the issue before the Court was whether insistence on the presence of the recorder was a violation of the NLRA, not whether refusal to acquiesce was a violation.

The Board also claims that the *Latrobe* dictum is contrary to the Supreme Court's statement in *Borg-Warner* that a "party is free ... not to bargain" about nonmandatory subjects. 356 U.S. at 349, 78 S.Ct. at 722–23. It argues that the right not to bargain entails the right to insist on the absence of the nonmandatory subject from negotiation. Otherwise, the finding of an unfair labor practice would be dependent upon whether a party said he would not bargain about a matter (no violation) or said that he insisted that the matter not be discussed (a violation). Such a result would clearly exalt form over substance.

Because the Board is correct in its assertion that there is no substantive difference between refusing to bargain about a matter and insisting that the matter not be discussed, it was not improper for the Company to refuse to acquiesce in the Union's nonmandatory demand. Thus, contrary to the Union's contention, the cause of the impasse does not lie with the Company. Rather, it lies with the Union for refusing to enter into the mandatory grievance meetings without the nonmandatory tape recorder. Since insistence to impasse on a nonmandatory subject constitutes an unfair labor practice, the Board's decision that the Union committed an unfair labor practice is "reasonably defensible" under the *Ford* *Motor Co.* standard. 441 U.S. at 497, 99 S.Ct. at 1849.

## B.

The Union relies on a different line of decisions than the *Latrobe, Bartlett-Collins* cases, claiming that a unilateral change of a nonmandatory subject of bargaining does not constitute an unfair labor practice. In particular, the Union cites as support this Court's decision in *Champion Parts Rebuilders, Inc. Northeast Div. v. NLRB,* 717 F.2d 845 (3d Cir.1983). In *Champion,* the company made a minor change in the procedure for photocopying doctors' excuses. This Court found no violation of §§ 8(a)(5) or 8(a)(1) in the company's unilateral modification of a nonmandatory subject of bargaining, citing *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) (because retirees' benefits are not a mandatory subject of bargaining, company may make unilateral changes without consulting union).

In response, the Board argues that verbatim tape recording is not a minor alteration in the procedure of grievance meetings. The Board's decision limited its proscription to verbatim recording, thereby allowing the widely accepted practice of longhand notetaking to continue. Unlike note taking, the verbatim recordings unduly formalize the bargaining process and impede the resolution of the dispute, according to the Board.

In addition, the Board contends that the Union's reference to *Champion Parts* and the subject of unilateral changes in nonmandatory subjects is not on point. It maintains that correlative to the duty to bargain in good faith, the Act imposes a duty "to refrain from holding [negotiations on mandatory subjects] hostage to a demand for a nonmandatory subject." *NLRB v. International Union of Operating Engineers,* 532 F.2d 902, 907 (3d Cir. 1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977). *See also Borg-Warner,* 356 U.S. at 348–50, 78 S.Ct. at 722–23. Therefore, the unfair labor prac-

tice found by the Board was not for the Union's unilateral change of a nonmandatory subject. It was free to do that under *Champion.* Rather, the unfair labor practice occurred when the Union insisted that the Company acquiesce in its demand on this nonmandatory subject as a precondition to entering into negotiations on a mandatory bargaining subject. On the basis of *Operating Engineers* and *Borg-Warner,* the Board's legal conclusion that the "Union's insistance ... on tape recording the [April 3 and 5] grievance meetings constituted unlawful insistence on a nonmandatory subject of bargaining in violation of section 8(b)(3) of the Act" is reasonably defensible.

### C.

The Union contends it has a right to record in order "to get accurate information," citing *Communication Workers of America, Local 1051 v. NLRB,* 644 F.2d 923 (1st Cir.1981). However, as the Board indicates, *Communication Workers* is not on point. In *Communication Workers,* the court enforced the Board's order that the employer make photocopies of grievance-related materials, such as employee attendance records, available to the Union. Previously, the employer had only allowed handcopying. Hence, *Communication Workers* establishes only the right to information necessary to negotiate the grievance. It is not the right to a tape-recorded transcript of the negotiations themselves. Since there is no established right to a verbatim record of the grievance, the Board reasonably construed the NLRA's policy in favor of open negotiations free from the constraints of tape recording by holding that the Union violated § 8(b)(3) of the Act by refusing to bargain in good faith.

While the Company and the Union have a long history of allowing longhand notetaking in grievance meetings and during collective bargaining, the Company has agreed only to tape recording at a meeting with a blind grievant in the mid–1970's and under protest at the March 26, 1984 investi-

gatory meeting. The subject of the use of a tape recorder at grievance proceedings does not appear in the parties' collective agreement and was not considered during negotiation.

■ The Union makes the claim that the Company waived its right to object to tape recording the April 3 and 5 meetings because it had allowed other meetings to be recorded. A waiver of statutory bargaining rights, however, must be "clear and unmistakable." *Metropolitan Edison Co. v. NLRB,* 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983); *Ciba-Geigy Pharmaceuticals Div. v. NLRB,* 722 F.2d 1120, 1127 (3d Cir.1983). The Company's limited acceptance of tape recording one grievance proceeding involving a blind grievant in 1975 and under protest in 1984 does not establish a clear and unmistakable waiver of the right to object to tape recording grievance meetings.

■ Similarly, the Union maintains that the parties established a past practice of allowing tape recording on request. In this regard, it cites the ALJ's statement that the parties "had tape recorded grievance sessions in the past.... [P]recedents for so doing had existed since the mid–1970's." App. at 20. But the Union ignores the Board's rejection of the ALJ's conclusion: "Although the judge found that a practice of tape recording grievance meetings existed between the parties, we are not satisfied the record supports his conclusion." App. at 12 n. 4. In light of the fact that the Company had only previously allowed tape recording twice, and neither instance was analogous to the April 3 and 5 grievance meetings, the Board's conclusion is supported by substantial evidence and should be upheld.

■ Notwithstanding the disagreement over whether a past practice had been established, the Board stated that "whether a past practice existed is irrelevant where insistance concerns a nonmandatory subject of bargaining." *See Bakery Workers Local 455,* 272 NLRB 1362, 1362 n. 2 (1984). This is so because a nonmandatory

subject does not become mandatory through past practice. *Allied*, 404 U.S. at 187, 92 S.Ct. at 401–02. Therefore, the Union's assertion of a past practice is irrelevant to this case.

### V.

Because substantial evidence exists to support the Board's determination that the Union violated the duty to bargain in good faith, we will enforce the Board's order.

Each party to bear its own costs.