**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PIZZA CRUST COMPANY OF PENNSYLVANIA, INC.,
Respondent.**

**No. 88–3251.**

United States Court of Appeals, Third Circuit.

Argued Oct. 17, 1988.

Decided Nov. 23, 1988.

Rehearing and Rehearing In Banc Denied Jan. 5, 1989.

Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, Collis Suzanne Stocking, Supervisory Atty., Frederick C. Havard (argued), N.L.R.B., Washington, D.C.

Robert Ufberg (argued), Kenneth Sandler, Rosenberg & Ufberg, Scranton, Pa., for respondent.

Before SLOVITER and HUTCHINSON, Circuit Judges, and DEBEVOISE, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

This case is before us on the application of the National Labor Relations Board for enforcement of its order requiring respondent Pizza Crust Company of Pennsylvania, Inc. (Company) to cease and desist from prohibiting off-duty employees from distributing union literature on its parking lot and from interrogating employees re-

garding union membership or activities, and requiring respondent to post notice and to hold a new election for choosing a collective bargaining representative.

■ This court has jurisdiction under section 10(e) of the National Labor Relations Act (the Act), 29 U.S.C. § 160(e) (1982), over the parts of the order requiring the Company to cease and desist and post notice. However, under our decision in *Graham Architectural Prod. Corp. v. NLRB*, 697 F.2d 534 (3d Cir.), *reh'g in banc denied*, 706 F.2d 441 (1983), we do not have jurisdiction over that part of the Board's order which directed that the December 21 union election be set aside and a new election held. *Accord NLRB v. Intertherm, Inc.*, 596 F.2d 267, 278 (8th Cir. 1979); *NLRB v. Monroe Tube Co.*, 545 F.2d 1320, 1329 (2d Cir.1976); *American Bread Co. v. NLRB*, 411 F.2d 147, 156 (6th Cir.1969); *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 106 (5th Cir.1963). *See also NLRB v. International Bhd. of Elec. Workers*, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940) (employers must wait until after elections have occurred to challenge orders under section 10(f)).

### II.

### *The Interrogation of an Employee*

#### A.

Pizza Crust is a family-owned business owned by Sam Falbo, Sr. and operating in Carbondale, Pennsylvania. The Company employs approximately 75 employees. Sam Falbo, Jr. serves as assistant general manager and his brother David Falbo is plant manager. An organizational campaign on behalf of the United Food and Commercial Workers Local 72 (Union) began in late September 1984. Employees Kevin White and Edward Ward, after meeting with Ralph Carlacci, a Union business agent, began distributing union authorization cards and other literature. Union supporters attempted to keep their organizing ef-

* Hon. Dickinson R. Debevoise, United States District Court for the District of New Jersey, sitting by designation.

forts secret from management. In early October, two union activists were fired.[1]

Before the organizational effort began, Kevin White had arranged with his supervisor, Tony Morgantini, to be excused from working beyond the scheduled end of his shift at 3:30 p.m. on some of the days on which he attended paralegal class. On October 29, White asked Morgantini if he could be excused from overtime that night because he had to take a test for his paralegal class. Morgantini replied that he would have to check with David Falbo. Later that morning, White was called to the office where David and Sam, Jr. awaited him. According to White, after he explained that he had to take a test that night and would appreciate being released from overtime, Sam, Jr. said:

> "its [sic] like this." He goes, "I am stuck between a rock and a hard place because we have a union campaign going on here." And he said that he didn't know who was involved. And he stopped and looked at me.

App. at 193. In addition, Sam, Jr. stated that because labor charges had been filed against him for firing two employees, "he would not be able to do anything for [White] because he didn't know who was involved in the campaign." *Id.* Ultimately, White was given permission to leave at 4:30 p.m. after working an hour overtime.

The ALJ credited White's testimony, finding that "White was ... placed in a position of being forced to barter his knowledge ... of union adherents for the privilege of being excused from overtime that day." App. at 194. The ALJ concluded that such questioning of employees constituted an interrogation in violation of section 8(a)(1).

A majority of the Board upheld the ALJ's finding of an unfair labor practice, concluding that "Falbo's heavy-handed suggestions concerning his need to know who was 'involved' with the Union were at least as coercive, under the circumstances, as

direct questions would have been." App. at 220 n. 2. Chairman Dotson dissented on the ground that Sam, Jr.'s comments to Kevin White "were too brief, general, and ambiguous to be objectively characterized as an *inquiry* into union activities...." App. at 222–23 (emphasis in original).

### B.

■ The Board's application of the law to particular facts as well as its findings on questions of fact underlying its determinations that unfair labor practices occurred are conclusive if supported by "substantial evidence on the record as considered as a whole," including any evidence detracting from the Board's view. 29 U.S.C. § 160(e); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *see also NLRB v. United Ins. Co.*, 390 U.S. 254, 260, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968).

The ALJ's determination of what happened in this meeting rested on inferences that he drew from the silence referred to in White's testimony, as well as the ALJ's credibility findings based on the witnesses' demeanor. Although the Company characterizes the conversations between Sam, Jr. and Kevin White differently than did the ALJ, the ALJ's interpretations of the evidence fall clearly within the province of the finder of fact. The Board was entitled to adopt the ALJ's findings with respect to the tone of the conversation with White, the implications arising from the questions Sam, Jr. left unasked, and the potentially coercive nature of the exchange. The Board's findings thus rest on substantial evidence on the record considered as a whole and may not be disturbed by us.

### III.

*The Solicitation and Distribution of Union Literature*

### A.

The second unfair labor charge before us stems from the Board's findings that the

---

**1.** Although the ALJ found the reasons given by the Company for these discharges "incredible", App. at 186, he denied the Union's unfair labor practice charge because the General Counsel failed to make out a prima facie case that management knew about these employees' organizing work and fired them because of these efforts.

Company violated Section 8(a)(1) by prohibiting off-duty employees from using its parking lot for solicitation or distribution relating to matters involving the exercise of their rights under section 7 of the Act. Five leafletters sought to distribute literature on December 14, 1984 and December 18, 1984. These leafletters were Ward and Burton, the two discharged employees, White and Joseph Kilhullen, both on workers' compensation at the time, and union business agent Carlacci. In the first exchange, occurring on December 14, David Falbo saw White and Kilhullen standing in the Company parking lot. He asked what they were doing, and they told him they were going to pass out "some stuff." David Falbo testified that he stated:

> Kevin, you're not here to see me about your compensation claim ... so basically you don't have really any business to be on the property. I said, if you want to go to the entrance and hand out whatever you're handing out, that's fine with me, but don't do it on the property.

App. at 204–05.

He also asked Kilhullen to move his automobile off the property, which Kilhullen did. David then went back inside the building. The leafletters began walking together towards the Company parking lot with leaflets in their hands. When they reached the border of the Company's property, they were met by Sam, Jr. Addressing Carlacci, Sam, Jr. stated that he did not want any leafletting on Company property. Pressed by Carlacci to allow employees White and Kilhullen on the premises, Sam, Jr. responded, according to his own testimony:

> [A]s far as I'm concerned ... they have no company business to conduct. So ... if you want to distribute your leaflets at the entrances, I won't stop you, but I don't want anybody on the premises.

App. at 205.

Carlacci agreed that the men would stand just off the premises and hand out leaflets. Sam, Jr. then left and the five men stood at the two entrances to the Company parking lot and handed out literature to employees entering and leaving the plant during the shift change.

Later on December 14, Kevin White, David, and Sam, Sr. got into an altercation. According to White's testimony, which the ALJ credited, Sam, Sr. told White that:

> [T]his was his plant and that it was his property and that I didn't have a right to be there and that I had better not attempt to stop any cars or block traffic.

App. at 205.

The ALJ credited the testimony of David and an employee witness as to what happened next: White cursed at Sam, Sr. and David threatened to call the police. The police were not called, however, and White continued his leafletting without further interruption.

On December 18, the five men again returned to leaflet. While standing at the entrance to the plant, Burton and Kilhullen were each separately given instructions by Sam, Sr., Sam, Jr. and/or David Falbo not to hand out leaflets on the property, obstruct traffic, or block the entranceways. App. at 205.

The ALJ found that the Falbos' actions in forbidding White and Kilhullen from coming onto the Company's parking lot to distribute leaflets constituted an unfair labor practice. The ALJ relied on *Tri–County Medical Center, Inc.*, 222 N.L.R.B. 1089 (1976), where the Board held that "except where justified by business reasons," rules denying off-duty employees entry to "parking lots, gates, and other outside nonworking areas" would be found invalid. *Id.* at 1089.

On this basis, the ALJ set aside the results of the union representation election which the Union lost by a vote of 43 votes to 30, with 5 challenged ballots. The ALJ reasoned that "[t]he Board has consistently held that such imposition of unlawful nodistribution rules constitutes conduct likely to affect the results of a Board-conducted election." App. at 213 (citations omitted). The majority of the Board upheld the ALJ's finding. Two of the three members concluded that the ALJ correctly applied *Tri–County,*

> in finding that the Respondent violated Sec. 8(a)(1) of the Act by refusing to

permit employees Kevin White and Joseph Kilhullen to distribute union literature in the Respondent's parking lot to employees who were either getting off the first shift or entering the building to work on the second shift. The mere fact that White and Kilhullen were then on leave as a result of employment-related injuries does not deprive them of employee status; and, contrary to the implications of the dissent, *Tri–County* does not distinguish among off-duty employees about their reasons for being off duty. App. at 220 n. 1.

Board Chairman Dotson dissented on the ground that two of the individuals involved in the leafletting had been discharged, and thus were no longer employees at the plant, while the other two were "inactive" employees. He would have applied the *Fairmont Hotel* test, 282 N.L.R.B. No. 27 (1986), rather than *Tri–County*, to assess whether the five leafletters should have been granted access to the parking lot. Under that test, he would have certified the results of the election, inasmuch as the Company permitted leafletting at the entrances to its parking lot and there was no evidence of interference with the prounion activities of active employees on the premises.

### B.

█ It is, of course, well settled that an employer may not prohibit its employees from distributing union literature in nonworking areas during nonworking time, absent a showing that a ban is necessary to maintain plant discipline or production. *Eastex, Inc. v. NLRB*, 437 U.S. 556, 570–71, 98 S.Ct. 2505, 2514–15, 57 L.Ed.2d 428 (1978); *Graham*, 697 F.2d at 541–42. This appeal requires us to revisit the Board's policy on distribution of union literature by off-duty employees.

In *Tri–County Medical Center*, 222 N.L.R.B. 1089 (1976), the leading Board case on the access rights of "off-duty" employees, the Board developed the following test for employer no-access rules for off-duty employees:

We conclude, in order to effectuate the policies of the Act, that such a rule is valid only if it (1) limits access solely with respect to the interior of the plant and other working areas; (2) is clearly disseminated to all employees; (3) applies to off-duty employees seeking access to the plant for any purpose and not just to those employees engaging in union activity. Finally, except where justified by business reasons, a rule which denies off-duty employees entry to parking lots, gates, and other outside nonworking areas will be found invalid.

*Id.* at 1089. We need no extended citation for the proposition that courts must defer to the Board's construction of the Act if reasonably defensible. *NLRB v. Local Union No. 103, Iron Workers*, 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978).

We find no basis to support Chairman Dotson's argument that the instant case should be considered under the test in *Fairmont Hotel*, 282 N.L.R.B. No. 27 (1986), rather than that of *Tri–County. Fairmont Hotel* involved leafletting by nonemployee union officials who did not represent the employees of the establishment. The Board held that in such a situation, a balancing test should be applied under which the Board would weigh the strength of the property owner's claim against the strength of the Section 7 right being asserted, and, if both claims appeared relatively equal, would consider the alternative means of communication available. *Id.* at 10. In this case, because the Board found a Section 8(a)(1) violation only with respect to off-duty employees, *Fairmont Hotel* is not applicable. This situation is clearly encompassed by *Tri–County*.

The Company suggests that the Board's *Tri–County* rule conflicts with this court's holding in *Graham Architectural Prods. Corp. v. NLRB*, 697 F.2d 534 (3d Cir.1983). In *Graham*, we considered the Board's finding of an unfair labor practice against an employer for unlawful interference with distribution of union literature based on a single incident during which a supervisor approached an employee handing out literature in the company parking lot before her

shift began and ordered her to "get the hell" off the lot and not hand out literature on company property. The employee responded that she had a right to distribute the literature and the supervisor told her to move to the plant entrance. She did so and resumed leafletting. *Id.* at 541.

We held that no section 8(a)(1) violation occurred because, "[t]he consequence of [the supervisor's] instruction to move elsewhere merely caused [the employee] the momentary inconvenience (five minutes) of moving to another nearby but more effective location." "Furthermore," we stated, "there was no evidence that [the employee] was intimidated by the incident." *Id.* at 542.

There are several significant differences between *Graham* and this case. In *Graham,* we characterized the employer's conduct as "trivial and isolated," and stated that "the slight interference was innocuous and did not rise to the level of a violation of the Act." *Id.* Here, on the other hand, the employer's conduct was manifested on several occasions on two different days.[2] Moreover, in *Graham,* "other witnesses testified that they freely distributed union literature in the plant and solicited employees without any interference by the Company." There was no such evidence in this case; the record is silent on that issue.

Most significant, in *Graham* there was no evidence of a company rule against distribution on company property. In contrast, in this case there is substantial evidence that the Falbos instituted and enforced an across-the-board rule against off-duty employees distributing union literature in the plant parking lot, which falls directly under the Board's *Tri–County* interpretation of the Act. All three Falbos, *i.e.,* the owner of the Company, the assistant general manager, and the plant manager, participated at one time or another, thereby signifying the authoritativeness of the communication to the leafletters.

We reject the Company's suggestion that *Graham* establishes a rule that deviates from that announced by the Board in *Tri–County.* Indeed, it is unlikely that we could properly do so. As the Supreme Court stated in *NLRB v. Local Union No. 103, Iron Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978), "[t]he Board's resolution of the conflicting claims in this case represents a defensible construction of the statute and is entitled to considerable deference. Courts may prefer a different application of the relevant sections, but '[t]he function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review.'" (Citing *NLRB v. Truck Drivers,* 353 U.S. 87, 96, 77 S.Ct. 643, 648, 1 L.Ed.2d 676 (1957)).

The Board, given its expertise in the area of labor relations, could reasonably conclude that employers' rules barring "off-duty" employees from distributing union literature in outside work areas "tend to" interfere with employees' section 7 rights under the Act, and thus violate section 8(a)(1) of the Act. *See United Parcel Service, Inc. v. NLRB,* 706 F.2d 972, 978 (3d Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 *cert. granted, judgment vacated and remanded on other grounds,* 464 U.S. 979, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983).

The Company argues that because the pamphleteers were not intimidated and in fact distributed the literature that they intended to distribute on December 14 and 18, there was no section 8(a)(1) violation. Nothing in the *Tri–County* rule implies that the Act is violated only if the employer was successful in its barring of solicitation. We are not at liberty to increase the difficulty borne by the General Counsel of making out unfair labor practice charges by requiring him or her to bear the additional burden of proving the consequences of il-

---

**2.** In the other cases relied on by Pizza Crust, there were also merely isolated incidents of the employer prohibiting employees from passing out literature on company property. *See NLRB v. First Nat'l Bank of Pueblo,* 623 F.2d 686, 692 (10th Cir.1980) (incident at issue was only a "petty, momentary squabble"). *See also Southern Maryland Hosp. Center v. NLRB,* 801 F.2d 666, 672 (4th Cir.1986) ("minimal intrusion").

legal conduct. Instead, the relevant issue is whether the employer established a policy or rule that was directly contrary to *Tri–County*. If so, such evidence would support the Board's finding of an unfair labor practice. *See NLRB v. Rich's Precision Foundry, Inc.*, 667 F.2d 613, 622 (7th Cir.1981) (upholding the Board's finding that such rules violated section 8(a)(1)); *Jeanette Corp. v. NLRB*, 532 F.2d 916, 918 (3d Cir.1976) (same).

Pizza Crust argues that "[n]o reasonable implication of a rule of general applicability (i.e., governing *all* employees) can be drawn [from the events at issue]." Reply Brief of Respondent at 3. However, the Falbos made repeated declarations that they were forbidding leafletting on Company property. Under the record in this case, the Board was entitled to view the Falbos' behavior as manifesting the existence or implementation of a rule against leafletting in the parking lot rather than as mere "isolated instances" of unlawful conduct.

Pizza Crust also challenges the ALJ's finding that the leafletters were prohibited from "using [the Company's] parking lot for solicitations and distributions relating to matters involving the exercise" of protected rights. App. at 207. Pizza Crust argues there is no evidence the leafletters intended to distribute literature on the parking lot. The ALJ's finding is supported by substantial evidence on the record as a whole. For example, on December 14 when David Falbo confronted the two employee leafletters while they were standing in the parking lot, they told him they were there for the purpose of distribution of literature. When they returned after removing their car and approached the property with leaflets in their hands, Sam Falbo, Jr. stopped them at the entrance and forbade them to proceed further. Indeed, even after Carlacci reminded Sam, Jr. that the two employees had the right to be on the premises, they were told that they could not proceed further than the entrance gates. Even the dissenting Board member agreed that the Company's "officials prohibited five individuals from engaging in prounion leafletting in the [Company's] parking lot." App. at 222.

The evidence is sufficient to find a prohibition comparable to that of a posted rule on the Company's bulletin board prohibiting off-duty employees from distributing union literature on the parking lot. In either case, the Company would clearly be in violation of the *Tri–County* rule.

## IV.

### Conclusion

For the reasons set forth above, we will enforce all portions of the Board's order except for the portion directing a new election over which we have no jurisdiction.

HUTCHINSON, Circuit Judge, concurring in part and dissenting in part.

Although the question is a close one, I agree with the Court that the Board's decision that the interrogation of employee Kevin White violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1) (West 1973), is supported by substantial evidence. Accordingly, I concur in that part of the Court's opinion.

However, I cannot agree that the Company unlawfully interfered with the distribution of Union literature by White and Joseph Kilhullen. I do not believe that verbal instructions on two days to two employees to confine their distribution to the plant entrance constitutes "a prohibition comparable to that of a posted rule on the Company's bulletin board."[1] Opinion of the Court, *supra* at 55. I fail to see how the facts adduced constitute "substantial evidence that the Falbos instituted and en-

---

1. I find it unnecessary to decide whether the status of White and Kilhullen on workmen's compensation leave makes them "off-duty" or "inactive" employees. The other three leafletters—Carlacci, Ward, and Burton—were not employees of the Company with a right to distribute on Company property. The presence of the three with no employment connection in the group further strengthens the Company's position and highlights the difficulty in inferring a rule prohibited by *Tri–County Medical Center, Inc.*, 222 N.L.R.B. 1089 (1976). That case involved only off-duty employees.

forced an across-the-board rule against off-duty employees distributing union literature in the plant parking lot." *Id.* at 54.

We have no evidence that the Falbos similarly prohibited any other employees under any other circumstances. We have no evidence that any other employees even knew of the Falbos' instructions to White and Kilhullen. In the absence of that type of evidence, I am unable to conclude that the Falbos' instructions to White and Kilhullen amount to a "rule" within the meaning of the Board's decision in *Tri–County Medical Center, Inc.*, 222 N.L.R.B. 1089 (1976). We have nothing to indicate that the Falbos' instructions were anything more than *ad hoc* responses to a tense situation.

I would analyze this situation under our decision in *Graham Architectural Products Corp. v. NLRB*, 697 F.2d 534 (3d Cir.1983), which I find controlling.[2] The facts before us are similar to those in *Graham.* In both cases the employees distributing literature were told they could do so at the plant entrance, but not on company property. No evidence exists in either case that the employees were " 'effectively precluded from engaging in lawful solicitation activity.' " *Id.* at 542 (quoting *Phillips Industrial Components, Inc.*, 216 N.L.R.B. 885, 885 (1975)). No evidence exists in either case that the employees were intimidated by the incident. The only difference is that the instruction to change location was given on two days in the case before us and stated only once in *Graham.* This distinction alone should not lead to a different result than in *Graham*, especially since the Falbos agreed that White and Kilhullen could distribute literature at the entrances to the plant and parking lot.

In conclusion, I believe the Company's actions alleged to have interfered with the distribution of Union literature were in the same category as those we held in *Graham* "did not rise to the level of a violation of

the Act." *Graham*, 697 F.2d at 542. Accordingly, I would deny enforcement of the Board's order with respect to this unfair labor practice charge.

---

**2.** I agree with the Court that the Board's *Tri–County* decision and our *Graham* decision do not conflict. The Court correctly observes that *Graham* did not involve a company rule against distribution. This may explain our failure to discuss or cite *Tri–County* in *Graham.* A "rule" sufficient to invoke *Tri–County* would, by definition, go beyond the "trivial and isolated" conduct which *Graham* held amounted to only "slight interference."