

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-23-1994

# NLRB v. Greensburg Coca-Cola Co.

Precedential or Non-Precedential:

Docket 93-3564

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"NLRB v. Greensburg Coca-Cola Co." (1994). *1994 Decisions.* Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

NOS.  93-3564 and 93-3604
_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner/Cross-Respondent

v.

GREENSBURG COCA-COLA BOTTLING COMPANY, INC.,

Respondent/Cross-Petitioner

_____

Appeal from the National Labor Relations Board
Nos. 6-CA-22872 and 6-CA 23022
_____

Argued June 6, 1994
Before:  MANSMANN, ALITO, and ROSENN, <u>Circuit Judges</u>
Opinion Filed:  November 23, 1994
_____

VALERIE J. HOFFMAN, ESQ.
BRADFORD L. LIVINGSTON, ESQ. (Argued)
KRISTIN E. MICHAELS. ESQ.
Seyfarth, Shaw, Fairweather & Geraldson
Suite 4200
55 East Monroe Street
Chicago, Illinois  60603
  Attorneys for Respondent/Cross-Petitioner

AILEEN A. ARMSTRONG, DEPUTY ASSOCIATE GENERAL COUNSEL
CHARLES DONNELLY, SUPERVISORY ATTORNEY
JULIE E. BROIDO, SENIOR ATTORNEY (Argued)
National Labor Relations Board
Washington, D.C.  20570
  Attorneys for Petitioner/Cross-Respondent

_____

OPINION OF THE COURT

ROSENN, <u>Circuit Judge.</u>

In this labor dispute, the Administrative Law Judge (ALJ) found that Greensburg Coca-Cola Bottling Company, Inc. (Greensburg Coca-Cola or the Company) unlawfully bargained to impasse and locked-out its employees to pressure them into accepting its "final offer." This included its proposal that the collective bargaining unit include only full-time employees defined as those working 40-hour weeks. The ALJ held that such a negotiation technique constituted bad faith bargaining, and thus Greensburg Coca-Cola violated sections 8(a)(1), (3) and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3) and (5) (the NLRA or Act). A divided three-member panel of the National Labor Relations Board (the NLRB or Board) affirmed, with corrections, the ALJ's findings and conclusions.

The Company has filed a petition for us to review the Board's order pursuant to 29 U.S.C. § 160(f) and the Board has filed an application for enforcement of its order pursuant to 29 U.S.C. § 160(e). We grant the Company's motion for review and deny the application for enforcement.

I.

Greensburg Coca-Cola is a corporation operating as a distribution facility in Greensburg, Pennsylvania. Local Union No. 30 of the Teamsters, Chauffeurs, Warehousemen and Helpers (the Union) represents the eight to ten warehouse employees at Greensburg Coca-Cola. Shortly after the Company purchased the

distribution facility from its previous operator in April of 1989, the parties began negotiating a new collective bargaining agreement and agreed to extend the previous contract during negotiations on an indefinite basis.

When the NLRB certified the Union to represent the Company's warehouse employees at the Greensburg facility in June of 1974, the Board described the bargaining unit in the recognition clause as "[a]ll plant employees . . . excluding all other employees."  However, the previous collective bargaining agreement, as well as every contract since the Union's certification, defined the bargaining unit as, "only full-time plant employees . . . excluding all other employees."  At the hearing before the ALJ, neither party was able to proffer a witness who could explain why there were differences in language between the Board certification and the parties' collective-bargaining agreements, or testify with certainty whether regular part-time employees were ever used by the employer during the parties' collective bargaining relationship.

Past collective-bargaining agreements also provided that "all regular full-time employees" would join the Union upon the completion of their 60-day probationary period, and that employees covered by the agreements were not guaranteed 40 hours of work per week.  A dispute between the parties over the definition of "full-time" employees arose when the Union requested that two part-time employees who had been previously hired by the Company's predecessor in 1988 as night loaders be made members of the bargaining unit.  Although these men were

employed on a regular basis, they often worked less than 40 hours per week. These employees were not members of the Union, nor had they ever been asked or required to join. The Union never filed a grievance or otherwise complained that these men had not joined the Union or that the substantive terms of the collective-bargaining agreement were not being applied to them.[1]

Immediately after the Company purchased the facility in June 1989, the parties began their first bargaining session. The Company submitted numerous proposals to the Union. One of the proposals suggested clarifying existing contract language in the recognition clause of the contract by specifically excluding "all part-time employees" from the bargaining unit. The Union rejected the proposal, taking the position that it had traditionally represented all employees who performed bargaining unit work, regardless of the number of hours per week that they worked. The Union stated that it did not want to waive its right to represent employees who regularly worked less than 40 hours per week and that it had in the past represented all regularly employed persons, regardless of the number of hours worked.

At the second negotiating meeting, the Company withdrew its proposal to specifically exclude regular part-time employees from the bargaining unit. Instead, it proposed to maintain the language of the recognition clause as it had existed in the previous agreements, but took the interpretive position that the

_____

[1]Greensburg Coca-Cola subsequently agreed to include the two employees in the bargaining unit upon verifying that they had been working full-time hours.

term "full-time plant employees" as used in the agreements meant employees working 40 hours per week.  The Union replied that the Company's withdrawal of its proposed language regarding part-time employees was merely a change in form rather than in substance, and refused to agree to the suggested definition.  The Union expressed its concern that if part-time employees were excluded from the bargaining unit, the Company could replace full-time positions with part-time employees at will, thereby reducing the size of the unit or eroding it altogether.

At the third meeting, the parties reiterated their positions, and the Union suggested that part-time employees were those who did not work on a regular basis, such as summer employees or employees who had not completed the probationary period.  The parties again reiterated their positions at two of the four subsequent bargaining sessions.  At the next meeting held on July 24, 1990, the Union proposed that employees who regularly worked less than 40 hours per week be included in the bargaining unit, but that the Company have the right to hire casual part-time employees on an occasional basis such as summer vacations.  The Company rejected the Union's counter-proposal.

The Union then asked Greensburg Coca-Cola for language regarding its intended utilization of part-time employees, and the Company presented the Union with what it termed its "final offer."  This final offer contained the recognition clause as originally stated in the previous bargaining agreements and proposed that the Company would not utilize part-time employees if full-time employees were on layoff status.  This proposal

provided that part-time employees would be considered probationary, that they could be terminated at any time without contractual recourse, and that they would not be entitled to fringe benefits or the contractual wage rate, but would be paid as determined by the Company. When the Union rejected the proposal, the Company served the Union with notice of its intent to terminate the extension agreement effective July 27, 1990.

The Union, however, objected to terminating the negotiations and the parties held two more bargaining meetings, but failed to make any progress. On September 19, 1990, Greensburg Coca-Cola locked out all of the employees in the warehouse bargaining unit in an effort to apply economic pressure on them to accept its final offer. The Company hired temporary replacements to take the place of locked out employees. After the lockout began, the parties held two more bargaining meetings where the parties discussed many issues and reiterated their positions regarding part-time employees, but again no progress was made. The ALJ credited Union testimony that the Company made it clear that the lockout would end only when the Union ratified the final offer.

After the Union filed the charges at issue here, the parties met once again. The ALJ credited the Union's testimony that at that meeting the Company altered its final offer with respect to the recognition clause, proposing for the first time that regular part-time employees be included in the bargaining unit. The parties then resolved this issue, although the lockout continued because the Union did not accept the Company's final

offer as a whole which included a number of other proposals that had also been the subject of negotiations.

The ALJ noted that throughout every negotiating meeting the parties discussed various proposals and counter-proposals pertaining to other mandatory subjects of collective bargaining. The ALJ held that although the parties discussed the recognition clause and its interpretation, they also discussed wages, health and welfare benefits, pensions, holidays, vacations, grievance and arbitration procedures, management rights, and employee work rules. Greensburg Coca-Cola alleges that the parties disagreed on 32 subjects. Although not discussed by the ALJ, we presume that the parties could not agree on one or more of these other issues, thereby forcing the lockout to continue.

## II.

The Board's application of the law to particular facts and its factual findings are conclusive if supported by substantial evidence on the record as considered as a whole, including any evidence detracting from the Board's view. NLRB v. Pizza Crust Co., 862 F.2d 49, 51 (3d Cir. 1988); 29 U.S.C. § 160(e). Therefore, this court "may [not] displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

Our review of questions of law is plenary. Tubari, Ltd. v. NLRB, 959 F.2d 451, 453 (3d Cir. 1992). However, we give some, but not unlimited, deference to the NLRB's construction of

a statute. See NLRB v. International Assoc. of Bridge, etc., 434 U.S. 335, 350 (1978). Thus, "[w]e will enforce a Board order that rests on a construction of the NLRA that is not 'an unreasonable or unprincipled construction of the statute.'" NLRB v. Joy Technologies, Inc., 990 F.2d 104, 108 (3d Cir. 1993) (citations omitted).

## III.

The issue before us is whether Greensburg Coca-Cola insisted on a non-mandatory subject of bargaining as a condition to a labor agreement. Sections 8(a)(5), 8(b)(3) and 8(d) of the NLRA, 29 U.S.C. §§ 158(a)(5), (b), and (d), require an employer to bargain "in good faith" with the statutory representative of its employees with respect to "wages, hours, and other terms and conditions of employment." Neither party is legally obligated to yield to the other on these mandatory subjects of bargaining. As to non-mandatory matters, however, each party is free to bargain or not to bargain. NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 348-49 (1958). Thus, a party violates section 8(a)(5) of the Act by insisting, even in good faith, on a non-mandatory subject as a precondition to reaching agreement on mandatory subjects. Id.; NLRB v. Pennsylvania Telephone Guild, 799 F.2d 84, 87 (3d Cir. 1986).

The recognition clause in a collective bargaining agreement is not a mandatory subject of bargaining. See Borg-Warner, 356 U.S. at 350. Neither is the scope of a bargaining unit. See NLRB v. International Union of Operating Engineers, 532 F.2d 902, 907 (3d Cir. 1976), cert. denied, 429 U.S. 1072

(1977).  Therefore, although the parties are free to negotiate about the scope of the bargaining unit, the employer may not make this a prerequisite to an agreement on mandatory items.  Id; see also Hill-Rom Co. v. NLRB, 957 F.2d 454, 457 (7th Cir. 1992) ("if an employer could vary unit descriptions at will, it would have the power to sever the link between a recognizable group of employees and its union as the collective bargaining representative").

Throughout all of the negotiations, Greensburg Coca-Cola insisted that part-time employees were historically excluded from the bargaining union.  To support its position, the Company emphasizes that the plain language of the previous contract's recognition clause states that the bargaining unit is to include "only full-time plant employees."  Greensburg Coca-Cola additionally notes that the two part-time night loaders had worked for over a year without being included in the Union.  The Company argues that it is incredible that two employees would forgo their right to union wages and benefits for over one year if they were in fact entitled to join the Union.  The Company further contends that if the Union so firmly believed that the two men belonged in the bargaining unit based on the completion of their probationary periods, the Union would have insisted that they be admitted immediately.

The ALJ acknowledged that the Company's argument had surface appeal, but rejected it upon considering the previous collective bargaining agreements as a whole and noting specifically that employees were not guaranteed a full 40 hours

of work per week. The ALJ credited Union testimony that the omission of the two night loaders was an oversight and that upon the Union's recognition of the oversight, it immediately raised the matter, but that the Company requested the Union to postpone discussing the issue until the upcoming contract negotiations. The ALJ found that the oversight was understandable, given the high attrition rate among night loaders.

The ALJ further found the testimony of the Union steward to be credible. The Union steward, who was on the Union's negotiating committee in 1974, testified that he understood the term "full-time employee" to mean all employees working on a regular basis who had completed their probationary period, regardless of the number of hours worked per week. He testified in essence that employees were historically considered "part-time" until they completed their probationary period, at which time they joined the Union pursuant to the security clause and were thereafter considered "full-time." The Union steward testified that he was not aware of any employee working less than 40 hours per week on a regular basis who had been excluded from the bargaining unit, with the sole exception of students hired as summer help. These students were not considered part of the bargaining unit, were not required to join the Union pursuant to the security clause, and were not accorded contract benefits even if they worked more than 60 days.

The Board adopted the ALJ's finding that the Union had historically represented all regular company employees who had completed their probationary period, irrespective of whether they

worked 40 hours or less. The Board further reasoned that giving the term "full-time" the literal interpretation urged by the Company would allow it to reduce the size of the unit at will because the contract did not guarantee employees a 40-hour work week and it gave the Company the right to unilaterally curtail work hours.

Greensburg Coca-Cola argues that the Board's and the ALJ's finding that it was attempting to change the scope of the bargaining unit is inconsistent with the evidence that after it withdrew its first proposal, it maintained the language of the previous recognition clause. The Company suggests that the recognition clause issue was of little importance to the parties. As support, it points out that the parties did not discuss the interpretation issue of part-time employees in the two meetings after the submission of its final offer, and did not raise it again until the first meeting after the lockout. The Company further notes that the first two unfair labor practice charges filed by the Union failed to mention the part-time issue. Finally, Greensburg Coca-Cola suggests that because the parties were apart on so many other issues and because the Union failed to respond to the final proposal, the Company believed that it had met the Union's concerns with respect to part-time employees.

We find the Company's assertions to be persuasive and supported by the record. The Board's finding that Greensburg Coca-Cola bargained to impasse on the exclusion from the unit of part-time employees as a condition to reaching agreement is not supported by the record. To the contrary, the record shows that

it was only in the Company's first contract proposal that it expressly sought to exclude part-time employees from the unit. After withdrawing this proposal, the Company did not attempt to alter the bargaining unit but rather merely advanced its interpretation of the contractual language. The party's disagreement as to the interpretation of the term "full-time plant employee" is not the equivalent of insisting on a change in the recognition clause of the contract. Moreover, as noted by the Board's dissenting opinion, had any question arisen after the execution of the collective bargaining agreement over the interpretation of the scope of the recognition clause, the matter readily could have been resolved by arbitration under the grievance machinery in the agreement. Thus, the Board erred in holding that the Company sought, through bargaining demands, in violation of sections 8(a)(1), (3), and (5) of the Act, to narrow the scope of those employees historically represented by the Union.

IV.

Greensburg Coca-Cola additionally challenges the Board's holding that it unlawfully locked out unit employees in violation of sections 8(a)(1), (3), and (5) of the Act. The Board adopted the ALJ's conclusion that the Company unlawfully locked out unit employees in support of its proposal to exclude part-time employees from the bargaining unit. The Company asserts that the Board erred by failing to analyze whether there was a nexus between the alleged unfair labor practice and the lockout.

An employer may lock out employees for the purpose of applying economic pressure on a union in support of a legitimate bargaining position.  American Ship Building Co. v. N.L.R.B., 380 U.S. 300, 310 (1965); Local 825, International Union of Operating Engineers v. NLRB, 829 F.2d 458, 460-61 (3d Cir. 1987).  An employer, however, violates the NLRA by locking out employees to compel acceptance of an unfair labor practice, such as insisting on a non-mandatory subject as a precondition to reaching agreement on mandatory subjects.  See American Ship Building Co., 380 U.S. at 308-09; Teamsters Local Union No. 639 v. NLRB, 924 F.2d 1078, 1085 (D.C. Cir. 1991).

On September 19, 1990, Greensburg Coca Cola locked out employees and hired temporary replacements, informing the Union that it would end the lockout only if Union members ratified its final offer.  Two months later, the Company altered its final offer, proposing to adopt a recognition clause that expressly included part-time employees in the unit.  Importantly, the Company continued the lockout after it modified its proposal to include part-time employees in the recognition clause.  This fact clearly demonstrates that the issue of part-time employees was not central to the lockout.

The record shows that the lockout did not have an effect on the continued bargaining of the parties as to the issue of part-time employees.  Because the parties had reached a general impasse in bargaining on other issues, the Company's interpretive position regarding the recognition clause was not the cause of the impasse or the lockout.  See Latrobe Steel Co.

v. NLRB, 630 F.2d 171, 181 (3d Cir. 1980) (for a strike to be deemed an unfair labor practice strike, it must, at least in part, be caused by an unfair labor practice; the mere fact that an unfair labor practice is committed prior to a strike does not necessarily render that strike an unfair labor practice strike), cert. denied, 454 U.S. 821 (1981). Thus, the Company lawfully locked out unit employees for the purpose of applying economic pressure on the Union in support of a legitimate bargaining position. Accordingly, the Board erred in holding that the lock out violated sections 8(a)(1), (3), and (5) of the Act.

V.

Accordingly, Greensburg Coco-Cola's petition for review will be allowed and the NLRB's motion for enforcement of its order will be denied. Each side to bear its own costs.

NLRB v. Greensburg Coca Cola Bottling Co., Nos. 93-3564/3604

MANSMANN, J., dissenting.


I respectfully dissent from the majority opinion because I believe that Greensburg Coca-Cola's insistence on its definition of "full-time" employee constituted an unfair labor practice.

I do not disagree with the majority opinion's presentation of the law regarding unfair labor practice. I would emphasize, however, that in NLRB v. Wooster Div. of Borg-Warner Corp., 356 U.S. 342, 349 (1958), the Supreme Court held that for a party to insist on a non-mandatory subject of bargaining is, "in substance," a refusal to bargain about mandatory subjects of bargaining. Obviously that does not mean that negotiations are only to include mandatory subjects of bargaining, but that a party may not lawfully insist upon a non-mandatory subject as a condition to any agreement. Id. The Court further held that the recognition clause in a collective bargaining agreement is not a mandatory subject of bargaining. Therefore, the scope of the bargaining unit is not a subject upon which either party may insist as a condition to the labor contract. This conclusion is a cornerstone to successful collective bargaining, for parties cannot meaningfully bargain about the wages, hours, or conditions of employment unless they

have agreed to the bargaining unit.  <u>Douds v. Internal</u>
<u>Longshoremen's Ass'n</u>, 241 F.2d 278, 282 (2d Cir. 1957).  <u>See</u> <u>also</u>
<u>Boise Cascade Corp. v. NLRB</u>, 860 F.2d 471, 475 (D.C. Cir. 1988);
<u>Newspaper Printing Corp. v. NLRB</u>, 625 F.2d 956, 963 (10th Cir.
1980), <u>cert. denied</u>, 450 U.S. 911 (1981); <u>Hess Oil & Chem. Corp.</u>
<u>v. NLRB</u>, 415 F.2d 440, 445 (5th Cir. 1969), <u>cert. denied</u>, 397
U.S. 916 (1970).

Here, throughout all of the negotiations, Greensburg
Coca-Cola insisted on its interpretation of the previous
contract's recognition clause.  Greensburg Coca-Cola argued that
its belief that part-time employees were historically excluded
from the bargaining unit was due to the plain language of the
recognition clause, which stated that the bargaining unit was to
include "only full-time plant employees."  The Board found,
however:  "As the newly arrived successor, the Respondent
admittedly had no idea what past meaning had attached to the term
`full-time employees.'"

In support of its position, Greensburg Coca-Cola
pointed out that the two part-time night loaders had worked for
over a year without being included in the union.  The Board held,
however, that night loaders typically had a high attrition rate
and that the reason the two employees were not included in the
union at the conclusion of their probationary period was merely
an oversight.  The Board further found that, upon the union's
recognition of the oversight, it immediately raised the matter;

at the company's request, the parties postponed discussing the issue until the upcoming contract negotiations. Finally, the Board credited the union business agent's testimony that the two night loaders did not want to pay back dues or start trouble with the company.

Although the company's arguments raise legitimate questions for the union,[2] they do not negate Greensburg Coca-Cola's unlawful insistence on a non-mandatory subject of bargaining. Borg-Warner instructs us that at the moment Greensburg Coca-Cola submitted its "final offer" to the union containing its interpretation of the term "full-time," as the Board found, Greensburg Coca-Cola committed an unfair labor practice. It is of no accord that Greensburg Coca-Cola subsequently agreed to include part-time employees in the bargaining unit nor that the parties were apart on other matters. The unlawful conduct need not be the sole cause for the failure to reach an agreement. Industrial Union of Marine & Shipbuilding Workers v. NLRB, 320 F.2d 615, 618 (3d Cir. 1963) ("If the proposal is not a mandatory bargaining subject, insistence upon it was a per se violation of the duty to bargain."), cert.

---

[2] Greensburg Coca-Cola countered that it was incredible that two employees would forgo their right to union wages and benefits for over one year if they were in fact entitled to join the union. If the union so firmly believed that the two men belonged in the bargaining unit based on the fact that they had completed their probationary periods, the company argued, the union would have insisted that they be admitted immediately.

_denied_, 375 U.S. 984 (1964). See also Latrobe Steel Co. v. NLRB,
630 F.2d 171, 179 (3d Cir. 1980) ("What Borg-Warner prohibits is
insistence upon a non-mandatory subject as a condition precedent
to entering an agreement."), cert. denied, 454 U.S. 821 (1981).

I take issue with the majority's crediting of
Greensburg Coca-Cola's argument that the Board's and the ALJ's
finding that it was attempting to change the scope of the
bargaining unit is inconsistent with the evidence that after it
withdrew its first proposal, Greensburg Coca-Cola maintained the
language of the previous recognition clause. Although this is
true, there is substantial evidence in the record regarding the
negotiations to support the Board's finding that Greensburg Coca-
Cola had consistently attempted to exclude part-time employees
from the bargaining unit.[3]

I find it noteworthy that the parties' disagreement was
not merely on the interpretation of the term "full-time" as
Greensburg Coca-Cola suggests. Greensburg Coca-Cola submitted
its "final offer" containing the recognition clause language from
previous collective bargaining agreements, as well as a proposal
offering that the company would not utilize part-time employees
if full-time employees were on layoff status. The ALJ did not
credit Greensburg Coca-Cola's self-serving testimony that it

---

[3]     Furthermore, Greensburg Coca-Cola's argument that an
impasse had not yet occurred conflicts squarely with our own
analysis of that same argument in Latrobe Steel, 630 F.2d at 179
(holding that impasse is not the test under Borg-Warner).

believed it met the union's concern with respect to part-time employees with this offer. Further, the Board found that Greensburg Coca-Cola, by this proposal, intended to exclude part-time employees from contract coverage, and that it consistently attempted to insert its interpretation of "full-time employees" into the contract language.

There is substantial evidence in the record to support this finding. I note the testimony that, although Greensburg Coca-Cola maintained the original contract language describing the unit scope as "full-time" employees, it conveyed quite clearly that it interpreted "full-time" to mean employees working 40 hours per week, which is contrary to the previous course of dealing. The Board's position is also supported by Greensburg Coca-Cola's original rejection of the union's proposal to include part-time employees in the unit scope.

There is certainly substantial evidence in the record, even considering the arguments of Greensburg Coca-Cola, that Greensburg Coca-Cola unlawfully insisted on changing the scope of the bargaining unit. I am particularly impressed by the union steward's explanation of the previous understanding of the term "full-time." The previous course of dealing is significant from a factual standpoint; as a matter of law Greensburg Coca-Cola violated §§ 8(a)(1), (3) and (5) at the moment it insisted on its

interpretation of the scope of the bargaining unit, which is a non-mandatory subject of bargaining.[4]

I dissent, too, from the majority's crediting of Greensburg Coca-Cola's argument that the Board failed properly to analyze whether there was a nexus between the unfair labor practice and the lockout. The Board adopted the ALJ's conclusion that Greensburg Coca-Cola unlawfully locked out unit employees in support of its proposal altering the unit's scope. As a matter of law, I agree. A lockout that is used to support an unlawful bargaining position is itself unlawful and violates the NLRA, specifically §§ 8(a)(1), (3), and (5). Therefore, since I am of the opinion that Greensburg Coca-Cola maintained an unlawful bargaining position with regard to unit scope, it is a short step for me to conclude that its lockout in support of that position was unlawful.

For the foregoing reasons I would have granted the NLRB's motion for enforcement of its order and denied Greensburg Coca-Cola's petition for review.

---

[4]    In light of my conclusion that Greensburg Coca-Cola unlawfully insisted on a non-mandatory subject of bargaining, I find unavailing the majority's crediting of Greensburg Coca-Cola's suggestions that the recognition clause issue was of little importance to the parties and that because the parties were apart on so many other issues and the union failed to respond to the final proposal, Greensburg Coca-Cola believed that it had met the union's concerns with respect to part-time employees.