

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-1995

# Metropolitan v NLRB

Precedential or Non-Precedential:

Docket 95-3086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Metropolitan v NLRB" (1995). *1995 Decisions.* Paper 281.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/281

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-3086


METROPOLITAN DISTRICT COUNCIL
OF PHILADELPHIA AND VICINITY
UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF
AMERICA, AFL-CIO,

                              Petitioner

            v.

NATIONAL LABOR RELATIONS BOARD,

                              Respondent


On Appeal from a Final Decision
and Order of the National Labor
        Relations Board
        (No. 4-CA-18791)


Submitted October 12, 1995

BEFORE:  GREENBERG and LEWIS, Circuit Judges,
     and VANARTSDALEN, District Judge*

    (Filed:  October 25, 1995)


                    Richard C. McNeill, Jr.
                    Sagot, Jennings & Sigmond
                    1172 Public Ledger Bldg.
                    Philadelphia, PA 19106

                    Kathy Krieger
                    101 Constitution Ave., NW
                    Washington, DC 20001

* Honorable Donald W. VanArtsdalen, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

David M. Silberman
Laurence Gold
815 16th Street, NW
Washington, DC 20006

Cynthia C. Estland
727 E. 2nd Street
Austin, TX 78705

Attorneys for Petitioner

Frederick L. Feinstein
General Counsel
Linda Sher
Acting Associate General Counsel
Aileen A. Armstrong
Deputy Associate General Counsel
Robert J. Englehart
Margaret G. Neigus
National Labor Relations Board
1099 14th Street, N.W.
Suite 10700
Washington, DC 20570-0001

Attorneys for Respondent

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. PROCEDURAL AND FACTUAL HISTORY

The Metropolitan District Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America, petitions this court for review of a Decision and Order of the National Labor Relations Board dismissing an unfair labor practice complaint against Leslie Homes, Inc. The Board found

2

that Leslie Homes did not violate section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), when it denied petitioner's representatives access to its property to distribute "area standards" handbills to potential purchasers of condominiums which Leslie Homes was constructing. The Board had jurisdiction under 29 U.S.C. § 160(a), and we have jurisdiction under 29 U.S.C. § 160(f).

The facts are not in dispute and are as follows. Leslie Homes began constructing Crestwood, a 288 unit condominium project, on its property in Bristol, Pennsylvania, in 1988. At the outset of construction the petitioner represented the carpenters on the project. In December 1989, however, Leslie Homes started to employ nonunion carpenters at wage rates and with benefits below prevailing union standards. In response, the petitioner, on April 1, 1990, attempted to distribute handbills to prospective condominium purchasers at Crestwood. The handbills asserted that Leslie Homes was employing "foreign/immigrant workers" paid substantially less than prevailing, i.e., union wages and benefits, thereby "destroying" the fair wages and living standards of area tradesmen. To distribute the handbills, petitioner's representatives stood on the sidewalk and walkway in front of a model condominium. But Leslie Homes would not permit the distribution of the handbills on its property and, consequently, it directed the handbillers to leave. They refused to leave until the local police at Leslie Homes's request directed them to do so. Subsequently, they

3

distributed the handbills on a public road abutting Leslie Homes's property.

These events led petitioner to file an unfair labor practice charge with the Board, which filing resulted in the Board's General Counsel issuing a complaint on September 27, 1990, contending that Leslie Homes violated section 8(a)(1) of the NLRA by calling the police to eject petitioner's handbillers. Inasmuch as the parties stipulated to the facts, they waived a hearing before an administrative law judge. Consequently, the Board transferred the proceeding directly to it. While the matter was pending before the Board, the Supreme Court decided Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841 (1992), which involved issues similar to those here. Predicated on Lechmere, the General Counsel moved to dismiss the complaint. The Board, in a split decision on January 25, 1995, issued its Decision and Order dismissing the complaint. The petitioner then initiated the proceedings now before us.

## II. STANDARD OF REVIEW

The parties dispute the standard of review. The petitioner contends that the Board decided the matter on legal grounds by interpreting and applying Supreme Court precedent and it thus contends that in this case we "exercise plenary review of [a] question[ ] of law." Tubari Ltd. v. NLRB, 959 F.2d 451, 453 (3d Cir. 1993). It also cites NLRB v. Greensburg Coca-Cola Bottling Co., 40 F.3d 669, 673 (3d Cir. 1994), and Furniture Renters of America, Inc. v. NLRB, 36 F.3d 1240, 1248 (3d Cir.

4

1994), in support of this contention. On the other hand, the Board urges that our review is deferential both as to the Board's conclusions of law and its application of the law to the facts. It cites NLRB v. Local Union No. 103, 434 U.S. 335, 350, 98 S.Ct. 651, 660 (1978), and Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 465 (1951), in support of this contention. We will not linger on the point, because even exercising plenary review we agree with the Board and thus will deny the petition.

## III. DISCUSSION

As is often the situation in labor law, this case arises at the intersection of two claims. On the one hand, Leslie Homes, at common law and thus under Pennsylvania law, has the general right to decide who may come on to its property. On the other hand, under section 7 of the NLRA, 29 U.S.C. § 157, the right of employees "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" includes union activity intended to protect the area wage and benefit standards that a union has negotiated for its members. Giant Food Markets, Inc. v. NLRB, 633 F.2d 18, 23 (6th Cir. 1980). "Area standards" activity, such as that involved in this case, is intended to protect wage and benefit standards by exerting pressure on nonunion employers with a competitive advantage over union employers who pay higher

5

wages.  Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters, 436 U.S. 180, 206 n.42, 98 S.Ct. 1745, 1762 n.42 (1978).  Thus, in this case the conflict is obvious: petitioner sought to engage in activities sanctioned under the NLRA on property where Leslie Homes exercised its property rights to exclude petitioner's representatives.

The Supreme Court first balanced the property rights of an employer with its employees' rights to engage in concerted activity in Republic Aviation Corp. v. NLRB, 324 U.S. 793, 65 S.Ct. 982 (1945).  There it held that generally an employer can be compelled to allow its employees to distribute literature on its property.  However, in NLRB v. Babcock and Wilcox, 351 U.S. 105, 112, 76 S.Ct. 679, 684 (1956), the Court distinguished Republic Aviation and held that in general an employer cannot be compelled to allow nonemployee organizers to distribute union literature on its property.  Id. at 112, 76 S.Ct. at 684.  But Babcock included an exception that the employer must grant access if nonemployees may not by other reasonable methods communicate with the employees.[1]

It is not surprising that the Board frequently has addressed the issues raised by unions' reliance on section 7 to pursue their activities on employers' property.  Ultimately, in Jean Country, 291 NLRB 11 (1988), it determined that it would apply a balancing test to accommodate an employer's and its

---

[1] The Court also indicated that the employer may not discriminate against the union if it allows other distributions on its property.  Babcock, 351 U.S. at 112, 76 S.Ct. at 684.  We are not concerned with that situation in this case.

6

employees' interests. In this process, the Board would consider "the availability of reasonably effective alternative means [of exercising the section 7 rights] as especially significant." Id. at 14. As might be expected when a balancing test is applied, the Board thought that the standards governing the application of the balancing test would be developed in an evolutionary process.

The regime of Jean Country did not long survive. In Lechmere, Inc. v. NLRB, 502 U.S. 527, 112 S.Ct. 841, the Supreme Court addressed a situation in which Lechmere, the employer, barred nonemployee union organizers from its property. The organizers had been placing handbills on the windshields of cars in a parking lot used by employees. The Board found that Lechmere's actions constituted an unfair labor practice and ordered Lechmere to cease and desist from barring the union organizers from the parking lot. The Court of Appeals for the First Circuit denied Lechmere's petition for review and enforced the order. Lechmere, Inc. v. NLRB, 914 F.2d 313 (1st Cir. 1990).

The Supreme Court reversed. It pointed out that by its plain terms the NLRA confers rights only on employees and not on unions or their nonemployee organizers. 502 U.S. at 531-32, 112 S.Ct. at 845. The Court then indicated that, in Babcock, it had recognized that section 7 of the NLRA "may, in certain limited circumstances, restrict an employer's right to exclude nonemployee union organizers from his property." Id. at 532, 112 S.Ct. at 845. Nevertheless, "[a]s a rule . . . an employer cannot be compelled to allow distribution of union literature by nonemployee organizers on his property." Id. at 533, 112 S.Ct.

at 846.  The Court said that neither Central Hardware Co. v. NLRB, 407 U.S. 539, 92 S.Ct. 2238 (1972), nor Hudgens v. NLRB, 424 U.S. 507, 96 S.Ct. 1029 (1976), modified "Babcock's holding that an employer need not accommodate nonemployee organizers unless the employees are otherwise inaccessible." Id. at 534, 112 S.Ct. at 846.  The Court next pointed out that in Sears, Roebuck & Co. it had held "that arguable § 7 claims do not pre-empt state trespass law, in large part because the trespasses of nonemployee union organizers are 'far more likely to be unprotected than protected.'" Id. at 535, 112 S.Ct. at 846–47.

The Court then considered Jean Country which it described as representing "the Board's latest attempt to implement the rights guaranteed by § 7." 502 U.S. at 535, 112 S.Ct. at 847.  The Court said the Board concluded in Jean Country "that it was appropriate to approach every case by balancing § 7 rights against property rights, with alternative means of access thrown in as nothing more than an 'especially significant' consideration." Id. at 538, 112 S.Ct. at 848.  But the Court rejected Jean Country, holding that "[s]o long as nonemployee union organizers have reasonable access to employees outside an employer's property, the requisite accommodation has taken place. It is only where such access is infeasible that it becomes necessary and proper to take the accommodation inquiry to a second level, balancing the employees' and employers' rights." Id.

Lechmere clearly is controlling here.  In this case the Board assumed, without deciding, "that Lechmere permits a union

8

to show that an employer's customers are not reasonably accessible by nontresspassory methods, and that union representatives therefore may be entitled to engage in area standards activities on the employer's property."  316 NLRB 123, 129 (1995).  It concluded, however, "that reasonable alternative means were available to the [petitioner] for communicating its area standards message to potential customers of [Leslie Homes]."  Id. at 131.  The petitioner expressly disclaims challenging this finding.  Brief at 5.  Consequently, we are constrained, as the petitioner itself asserts, simply to determine whether the Board applied the correct legal standard because the facts are not in dispute.

On this point we have no doubt.  It is beyond argument that Lechmere was concerned with protecting private property interests.  We can conceive of no reason why this policy would be any less compelling in a case in which a union was engaged in area standards handbilling than in a case where the union was engaged in direct organizational activity.  Indeed, it might be supposed that, if anything, the employer's rights would be greater when area standards handbilling is involved.  In this regard we observe that whereas the interests of potential customers of the employer are tangential to the dispute between the employer and the union, the employer's employees have a significant interest in a union's organizational activity.  See Sears, Roebuck & Co., 436 U.S. at 206 n.42, 98 S.Ct. at 1762 n.42 ("[S]everal factors make the argument for protection of trespassory area-standards picketing as a category of conduct

9

less compelling than that for trespassing organizational solicitation.).[2]

Petitioner seeks to avoid this result by playing on the distinction between direct and derivative rights in section 7. Petitioner points out that in Lechmere, the nonemployee union organizers were asserting an indirect right of access to the employer's property in order to encourage the employees to organize. Lechmere, 112 S.Ct. at 846. This derivative right is based on the fact that "[t]he right of self-organization depends in some measure on the ability of employees to learn the advantages of self-organization from others." Babcock, 351 U.S. at 113, 76 S.Ct. at 685. The present case is distinguishable, petitioner contends, because here the union organizers were exercising a different section 7 right altogether, namely, their right as the representatives of a group of employees to engage in concerted activities for their mutual aid and protection. Petitioner concludes from this that Lechmere does not control

---

[2] We note that our opinion accords generally with the reading of Lechmere in other circuits. The Court of Appeals for the Sixth Circuit recently emphasized that "[u]nder the § 7 hierarchy of protected activity imposed by the Supreme Court, non-employee area-standards picketing warrants even less protection than non-employee organizational activity." NLRB v. Great Scot, Inc., 39 F.3d 678, 682 (6th Cir. 1994). The Court of Appeals for the Ninth Circuit has refused even to apply Lechmere's "inaccessibility exception" where nonemployees target customers as opposed to employees. Sparks Nugget, Inc. v. NLRB, 968 F.2d 991, 997-98 (9th Cir. 1992). Of course, we have no reason to consider whether the "inaccessibility exception" could apply in this case, as petitioner does not challenge the Board's finding that petitioner had other means to communicate with Leslie Homes's customers.

10

this case and that we should remand the cause to the NLRB for reconsideration.[3]

We decline to read Lechmere so narrowly. The question is not whether the right is described more aptly as direct or derivative, but whether the private property rights of an employer must give way to the rights of nonemployee interlopers. We believe that primary thrust of Lechmere was to reemphasize the protection of employers' private property rights against unwarranted intrusions by nonemployees. The "distinction 'of substance'" is between the employees of the employer who is asserting his property rights and individuals who do not work for that employer but seek access to his property. Lechmere, 112 S.Ct. at 848 (citing Babcock, 351 U.S. at 113, 76 S.Ct. at 684). In other words, the rule tracks the rather common-sense notion that an employer has greater rights against outsiders and strangers to his property than he has against those he invites to work for him.

The case law in this area consistently has analyzed these issues in terms of property owners versus interlopers, and we believe that the protections afforded property owners against trespassory invasions apply whether the outsiders are union organizers representing employees from other businesses or union organizers acting independently. The case finally gets down to this easily understandable rule of law: a nonemployee does not

_____

[3]The Board in its brief suggests that Lechmere itself involved direct rather than derivative rights. In view of our conclusions we do not reach this point and instead will treat that case as involving derivative rights.

11

have a right of access to the employer's property, at least if he has reasonable alternative means to exercise his section 7 rights whether they are direct or derivative.

The petition for review of the Decision and Order of January 25, 1995, will be denied.